UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>v.<br><br>KELLY HARRIS and NEAL HARRIS,<br>    Defendants. | CRIMINAL ACTION NO. 5:22-100-KKC<br><br><br>**OPINION AND ORDER** |

*** *** ***

This matter is before the Court on Defendants' joint motion to dismiss the indictment against them for failure to state a claim pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v). (DE 23; DE 24.) For the following reasons, the Court denies the motion.

**I.   Background**

To provide economic relief during the COVID-19 pandemic, the United States Small Business Administration's (the "SBA") Economic Injury Disaster Loan ("EIDL") program extended loans to small businesses for expenses that those businesses could not pay due to the pandemic. (DE 2 ¶ 3.) To apply for these loans, small business owners submitted applications via an online portal. (*Id.*) Applicants certified that the information contained in the applications was accurate. (*Id.*)

The indictment charges Defendants Kelly Harris and Neal Harris with twelve counts of wire fraud related to the EIDL program under 18 U.S.C. § 1343. (*Id.* ¶¶ 5-9.) The indictment alleges that Defendants "devised and intended to devise a scheme to defraud the United States, various financial institutions, and individuals, and to obtain money and property by means of materially false and fraudulent pretenses, representations and

1

promises." (*Id.* ¶ 6.) The indictment also states that Defendants "for the purpose of executing the scheme[,] and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce . . . signals and sounds." (*Id.* ¶ 9.) According to the indictment, the scheme occurred from approximately May 5, 2020, through approximately July 25, 2020. (*Id.* ¶ 6) As set forth in the indictment, the purported scheme involved Defendants making false statements about their businesses in their applications for EIDL loans in order to receive loan proceeds. (*Id.* ¶¶ 7-8.) Such allegedly false statements included "when the businesses originated, the nature of the businesses, the number of employees of the businesses, and the gross revenues of the businesses prior to January 31, 2020." (*Id.* ¶ 8.) The twelve counts encompass each of the falsified applications and each subsequent wire transfer of loan proceeds. (*Id.* ¶ 9.)

The indictment details the false statements provided in each application, which include:

- Ruby E. Bailey Family Service Center had gross receipts of $378,000, lost rents of $15,000, and had ten employees;

- Turtle Doves was established in January 2019, had gross receipts of $247,926, lost rents of $12,000, and had five employees;

- North Side Market was established in January 2019, had gross receipts of $288,558, lost rents of $12,000, and had five employees;

- Grace Christian Fellowship Church was established in January 2017, had gross receipts of $198,459, lost rents of $10,000, and had three employees;

- Ruby E. Bailey Family Service Center had gross receipts of $378,000, lost rents of $20,000, had three employees, and was in the agriculture business; and

- American Workhorse LLC was established in December 2017, had gross receipts of $288,558, lost rents of $20,000, had five employees, and was in the agriculture business.

(*Id.* ¶ 9.)

Defendants move to dismiss the indictment for failure to state the offense of wire fraud. (*See* Joint Mot. to Dismiss.) They argue that even if the facts alleged in the indictment are true, those facts are insufficient to result in a conviction. (*Id.* at 4.) Defendants contend that the Government will be unable to prove Defendants "devised a scheme or artifice to defraud" or "had the intent to deprive a victim of money or property." (*Id.*)

## II.     Analysis

### A.     The majority of Defendants' disputes are questions of fact inappropriate for resolution at this stage.

Under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), a defendant may move to dismiss an indictment if the indictment fails to sufficiently state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). Courts construe an indictment liberally in favor of the indictment. *United States v. Huff*, 630 F. App'x 471, 489 (6th Cir. 2015). An indictment is sufficient if it (1) "'contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend,'" and (2) "enables [the defendant] to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Id.* (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). An indictment fulfills the first requirement if it "states the offense using the words of the statute itself, as long as the statute fully and unambiguously states all the elements of the offense." *Id.* (citation and quotation marks omitted). But "the recitation of statutory language must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *Id.* (citation and quotation marks omitted).

3

However, in bringing a motion to dismiss an indictment, "[a] defendant may not challenge an indictment on the ground that it is not supported by sufficient evidence." *United States v. Levin*, 973 F.2d 463, 468 n.2 (6th Cir. 1992) (citation and quotation marks omitted). "At this stage, the Court's review of [an indictment] is limited to legal questions." *United States v. McDaniels*, Criminal Action No. 5:20-103-DCR, 2021 WL 1343506, at *1 (E.D. Ky. Apr. 9, 2021). Therefore, a court should deny a motion to dismiss if it raises a factual challenge that "requires a pretrial test of the government's evidence." *United States v. Hann*, 574 F. Supp. 2d 827, 830 (M.D. Tenn. 2008) (citation and quotation marks omitted). "[T]he prosecution's evidence is tested at trial, not in a preliminary proceeding." *United States v. Short*, 671 F.2d 178, 183 (6th Cir. 1982).

Here, the indictment sufficiently states the wire fraud offense because it tracks the elements of the wire fraud statute nearly verbatim. 18 U.S.C. § 1343, the wire fraud statute, provides that "[w]hoever, having devised or intending to devise any scheme . . . to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . . causes to be transmitted by means of wire . . . communication in interstate . . . commerce, any . . . signals . . . or sounds for the purpose of executing such scheme" commits wire fraud. 18 U.S.C. § 1343. In directly referencing the statutory language, the indictment alleges that Defendants "**devised and intended to devise a scheme to defraud** the United States, various financial institutions, and individuals, and **to obtain money and property by means of materially false and fraudulent pretenses, representations and promises**." (DE 2 ¶ 6 (emphasis added).) The indictment also states that Defendants "**for the purpose of executing the scheme[,]** and attempting to do so, **caused to be transmitted by means of wire communication in interstate commerce** . . . **signals and sounds**." (*Id.* ¶ 9 (emphasis added).)

Further, the indictment ties the elements of wire fraud to detailed facts and circumstances to fairly inform Defendants of the wire fraud charges against them. As the indictment describes, the purported scheme involved Defendants providing false statements about their businesses in multiple online applications for EIDL loans in order to receive loan proceeds. (DE 2 ¶¶ 7-8.) According to the indictment, this scheme occurred from approximately May 5, 2020, to approximately July 25, 2020. (*Id.* ¶ 6.) The indictment summarizes the allegedly false statements as relating to "when the businesses originated, the nature of the businesses, the number of employees of the businesses, and the gross revenues of the businesses prior to January 31, 2020." (*Id.* ¶ 8.) The Government lists each of the allegedly false statements[1], the applications in which those statements were contained, and the exact wire transfers associated with the loan proceeds that Defendants received as a result of each falsified application. These details—including the dates when the scheme took place, the references to the false statements at issue, and the identification of the applications where those false statements are found—are enough to enable Defendants to plead an acquittal or conviction to bar future prosecutions for the same offense. The indictment's citation to the wire fraud statute in combination with the statutory language and specific allegations of wire fraud are sufficient to withstand Defendants' motion to dismiss. *Huff*, 630 F. at 489 *(*finding indictment was sufficient where it "track[ed] verbatim the language of the

---

[1] These statements include (1) claims that Ruby E. Bailey Family Service Center had gross receipts of $378,000, lost rents of $15,000, and had ten employees; (2) claims that Turtle Doves was established in January 2019, had gross receipts of $247,926, lost rents of $12,000, and had five employees; (3) claims that North Side Market was established in January 2019, had gross receipts of $288,558, lost rents of $12,000, and had five employees; (4) claims that Grace Christian Fellowship Church was established in January 2017, had gross receipts of $198,459, lost rents of $10,000, and had three employees; (5) claims that Ruby E. Bailey Family Service Center had gross receipts of $378,000, lost rents of $20,000, had three employees, and was in the agriculture business; and (6) claims that American Workhorse LLC was established in December 2017, had gross receipts of $288,558, lost rents of $20,000, had five employees, and was in the agriculture business. (DE 2 ¶ 9.)

[statute]" and "identifie[d] with precision the date and location of [the defendant's] offense as well as the specific statute his conduct violated").

The vast majority of Defendants' objections to the indictment implicate questions of fact rather than questions of law. Throughout their motion, Defendants counter the Government's facts in its indictment with their own version of facts. (*See generally* Joint Mot. to Dismiss.) While courts may determine "preliminary findings of fact necessary to decide questions of law presented by pretrial motions," these findings cannot "invade the province of the ultimate factfinder." *United States v. Craft*, 105 F.3d 1123, 1126 (6th Cir. 1997). Repeatedly, Defendants ask the Court to do just that—make factual findings that ultimately belong to the factfinder.

The main thrust of Defendants' arguments involve factual challenges to the Government's allegations regarding the creation of Defendants' businesses. According to Defendants, the Government's theory is that Defendants represented that their businesses existed before January 31, 2020, when their businesses were not formed until after that date. (Joint Mot. to Dismiss at 9.) Defendants frame this as a big misunderstanding: their businesses existed before January 31, 2020, but Defendants just failed to register the entities and adhere to other corporate formalities until the SBA notified them to the contrary. (*Id.* at 9-10.) Defendants attach exhibits that they claim show when their businesses were created. (*Id.* at 8.) Defendants argue that this "proves" that they were unaware that their businesses were unregistered, and therefore, they lacked the requisite intent. (*Id.* at 10.) Accordingly, Defendants request that this Court make a finding of fact with respect to when the businesses existed to decide whether the Government's indictment fails to state an offense. (DE 26 at 3.)

The Court declines to do so. *See Levin*, 973 F.2d at 467 (stating that "district courts *may* make preliminary findings of fact necessary to decide questions of law presented by

pretrial motions") (emphasis added). At bottom, Defendants ask the Court to test their evidence against the Government's. Resolution of such competing evidence is inappropriate at this stage. *See Short*, 671 F.2d at 183.

Defendants remaining factual objections to the indictment similarly dispute Defendants' intent or otherwise claim that the Government has insufficient evidence to prove intent. Defendants raise the following factual disputes: (1) Defendants publicized that they sought assistance, and "[a] person attempting to perpetrate fraud does not advertise that they are committing fraud;" (2) Defendants were eligible to receive the EIDL loans because their applications "prove[] that they were who they said they were and owned businesses they claimed to own;" and (3) in applying for the loans, Defendants held "honest good-faith belief[s]" since they did nothing to conceal or disguise their identities. (Joint Mot. to Dismiss at 13-15.) Ultimately, these factual disputes require the Court to sift through competing evidence and therefore, are best reserved for determination by the factfinder at trial. Defendants also argue that the indictment does not include any facts related to intent. (Joint Mot. to Dismiss at 13.) But Defendants cannot move to dismiss the indictment "on the ground that it is not supported by sufficient evidence." *Levin*, 973 F.2d at 468 n.2. Moreover, the indictment must only include "a statement of the facts and circumstances as will inform the accused of the specific offense" with which they are charged. *Huff*, 630 F. App'x at 489. As the Court found *supra*, the indictment does so.

As it relates to factual challenges to the indictment, Defendants' motion therefore fails, and the Court denies their motion on that basis.

### B. Defendants' other legal theories fail as a matter of law.

In the remainder of their motion, Defendants advance additional legal theories to support their argument. No theory succeeds.

7

First, Defendants argue that false statements[2] are insufficient to state a "scheme to defraud" as required for wire fraud. (Joint Mot. to Dismiss at 16.) "A scheme to defraud includes any plan or course of action by which someone intends to deprive another by deception of money." *United States v. Daniel*, 329 F.3d 480, 485 (6th Cir. 2003) (citation and quotation marks omitted). "Several common acts in support of a common fraudulent design may create a scheme to defraud." *United States v. Andrews*, 803 F.3d 823, 826 (6th Cir. 2015). Therefore, as long as the false statements were part of an overall plan to fraudulently deprive the victims of money, the indictment will sufficiently state a scheme to defraud. Accordingly, the indictment sufficiently states this element. The Government alleges that in committing wire fraud, Defendants executed a plan to fraudulently deprive the United States, various financial institutions, and individuals of money by making false statements about their businesses in their applications for EIDL loans in order to receive loan proceeds. (DE 2 ¶¶ 7-8.) In carrying out that plan, Defendants performed several common acts—Defendants purportedly made multiple false statements in each of their six loan applications and subsequently submitted those falsified applications. (*Id.* ¶ 9.) For purposes of a motion to dismiss, these allegations are enough to establish a scheme to defraud.

Next, Defendants contend that since the charges involve loans that Defendants would have to repay, no victim exists. According to Defendants, this means that the Government cannot prove that Defendants intended to deprive a victim of money. (Joint Mot. to Dismiss at 14.) As an initial matter, "the identity of the victim of a fraudulent scheme is not an

---

[2] Defendants additionally claim that the fact of "[w]hen Defendants businesses originated" is the only fact "that could remotely be susceptible to demonstrate a scheme to defraud or an intent to deprive." (DE 26 at 3.) However, this argument ignores that the indictment also cites to other false statements that could form the basis of such a scheme, including the organizations' amount of gross receipts, value of lost rents, number of employees, and lines of business. (*See* DE 2 ¶ 9.)

essential element that the government is required to prove." *United States v. McAuliffe*, 490 F.3d 526, 533 (6th Cir. 2007). So, even if the Government did not identify a victim in its indictment (it does), that would not prove fatal to the indictment. Moreover, the Government only needs "to establish that [Defendants] intended to deprive [the victim] of money in the *short-term*." *Daniel*, 329 F.3d at 488 (emphasis added). The Government does not need to show that the victim "was *actually* deprived of money." *United States v. Ames Sintering Co.*, 927 F.2d 232, 235 (6th Cir. 1990) (emphasis added). Therefore, a defendant's intention to repay loan money is irrelevant for purposes of proving wire fraud. *See United States v. Harris*, 658 F. App'x 228, 232 (6th Cir. 2016); *United States v. Diyali*, CRIMINAL NO. 5:22-CR-45-KKC-EBA-1, 2022 WL 16707971, at *2 (E.D. Ky. Nov. 4, 2022). To the extent that Defendants' motion argues that potential repayment of the loans negates intent as a matter of law, the Court cannot grant the motion.

Finally, Defendants raise arguments regarding the extent of the SBA's reliance on Defendants' representations. (Joint Mot. to Dismiss at 12.) However, reliance is not an element of wire fraud. *United States v. Merklinger*, 16 F.3d 670, 678 (6th Cir. 1994). Therefore, that argument also fails.

Because Defendants' legal challenges to the indictment are also unsuccessful, the Court denies the motion to dismiss in its entirety.

### III. Conclusion

Accordingly, the Court hereby ORDERS that Defendants' joint motion to dismiss the indictment (DE 23; DE 24) is DENIED.

This 13th day of December, 2022.



KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY

9